May it please the Court, Phillip Smith on behalf of the petitioners Mr. Jasbir Singh and his wife Ms. Kulinder Kaur. Your Honors, while serving as a section commander in the Rostri of Rifles, which is the Indian military's most elite counter-terrorist unit, Mr. Singh's military personnel records were leaked to Kashmiri insurgent groups that he was fighting at the time. Within approximately two weeks, an anonymous threat appeared at his house stating, We will kill you. Over the course of the next eight years, Mr. Singh's brother was murdered in the field where he worked. His daughter was shot at at school. Mr. Singh was twice attacked, once an acid attack, once a knife attack. Was the first incident, was that the note that was written in Urdu? That's correct, Your Honor. Could you explain the significance of Urdu? Urdu is a language that's used in the Kashmiri region of Pakistan and India. It is not used in the Punjab, which is the village, the home where Mr. Singh was living and where that death threat appeared. So the inference that's to be drawn is that it had to come from an insurgent? It is circumstantial evidence that it came from one of these insurgents. That's correct. And it was the result of the leak of the military records. Even if that's the proper assumption, why doesn't that just prove identity and not motive? In other words, what about the argument that these are general terrorists? They're terrorizing the community. And other people, maybe unlike your clients, are the subject of this terrorism. Well, other people are the subject of the terrorism. So it's a general terrorism in the region, perhaps by outsiders. But how does that prove their motive, that is, to go after him and people like him? Well, there was no evidence that other families were getting these threats. And it is circumstantial evidence that he was actively combating these insurgents. They got his record that he was a member of this military, this counterterrorist unit. Beyond that, there is evidence that there were news reports that the insurgents were targeting this Rostria Rifles unit. They were targeting their headquarters. They had ambushed and killed other members of the Rostria Rifles. Now, the evidence wasn't directly from those leaked records, the news articles, but they were targeting Rostria Rifles military officers. What's the standard by which the I.J. is supposed to determine the connectedness here? Is it by preponderance of the evidence? Is it more probable than not that there's a connection? I mean, I'm trying to figure out what standard the I.J. is required to adhere to as he decides whether or not there is this connection. Well, the standard set out by the Supreme Court in Elias Zacharias to prove on account of is there is some evidence, direct or circumstantial. In terms of the quantum of evidence, it frankly is not. It hasn't been explained post-Real ID Act what quantum of evidence you have to get to. And so the standard as enunciated is some evidence, direct or circumstantial. And that's in a situation where the case, the claim, presents mixed motive possibilities. For example, the court's case in Parousimova, which discussed this one central reason standard. There you had a case where there was an attempted rape. There was an ethnic slur that was used. There was a comment about the company that the young girl worked for. And so there was no evidence then to decide what was the reason for the attack. It could have been just a crime. And so there was no evidence. And so here there is ample, we'd say, circumstantial evidence of the reason for the persecution. Yeah. But the standard can't be in terms of how we're reviewing what the IJ did. Was there some evidence supporting the contention that there's a connection between his status and that elite rifle unit and the leaking of the identities and the attack? Because there clearly is some evidence. But the question is, is it enough to make it sufficiently probable that he's entitled to a conclusion that there's that connection? So I guess what you're saying, and the reason I ask the question is because I couldn't find it. We don't know whether the IJ is supposed to decide this on preponderance of the evidence or some other standard. I don't think the case law really sets that out. But now what we do know is that it does apply to both past persecution and a well-founded fear of future persecution. And that standard for well-founded fear is 1 in 10. And so the one central reason cannot overcome or be used to simply eliminate the well-founded fear standard for persecution. In a sense, though, if it's 1 in 10, then do you then also have to show somehow 51 percent the on-account-of ground? And I would also just want to quickly point out to the court. No, that's what I'm saying. And the BIA decision does say there's no evidence other than his testimony. I mean, that's what they say. So although you're looking at the evidence, you also have to look at the analytical framework that the BIA is using. Yeah, well, I found the BIA opinion odd. A charitable way of reading the BIA is that there's no evidence other than the evidence that he's presented. But then that's circular. Okay, well, let's look at the evidence he presented, which the BIA doesn't really go through. I'm quite sympathetic to your saying that. Well, that's correct. That's correct. If we were to hold for you and say that the BIA made a mistake in concluding that there was insufficient evidence upon which to find that there's a connection between his status as an elite rifler and these attacks, then what happens? If the court were to conclude that this record compels a finding that he suffered past persecution on account of this, then it should be remanded for the immigration judge to exercise his discretion on whether to grant assignments. Oh, you see, I think there's some more steps in there. For example, if there's the connection, I think you also have to show, and this wasn't reached, that these are this group or these terrorist groups the government is either unable or unwilling to control. We don't have anything one way or the other on that yet. Well, I think that's right. There wasn't a specific finding on that. We would argue that in the record it's amply demonstrated that they still have the will and the capacity to carry out their threats. But I think under Ventura we probably have to remand for them to determine that question. The court shouldn't be deciding a legal issue in the first instance without giving them the opportunity. I think that's right. And maybe there's a relocation question also. If he suffered past persecution, then you could look at this record to say, has there been evidence introduced to rebut his ability, because then the government would have that burden. But if you don't find past persecution, then that is an issue that has to be decided. Does he have the ability and is it reasonable that under all the circumstances that he relocate and would be safe? Can you run that by me again? So if we were to conclude that the BIA erred in not taking into account the other corroborative evidence and we were to conclude, you're asking us to conclude, as I understand it, that there was, because he was otherwise deemed credible, was evidence of past persecution and that we would remand for exercise of discretion as to whether to grant asylum. But then if we followed that route, would the issue of unwillingness or inability to control and relocation be foreclosed? Well, under the statute, if he's shown past persecution, then the burden shifts. And we would say that there hasn't been evidence introduced to shift that. And so we would say, yeah, it has been. It has been foreclosed. Although there was indication in the BIA record, I can't remember if it was the BIA or the IJ, raised the issue of relocation. The IJ did raise that. The IJ did. The BIA didn't adopt or also rely on that. If it goes back to the immigration judge, both parties usually have an opportunity then to raise additional issues. So I won't say that the agency could not raise that issue. Okay. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you. Good morning. May it please the Court. Lisa Morinelli on behalf of the Attorney General. The Board appropriately considered Petitioner's evidence, but found no evidence to find that a central reason for Petitioner's harm was on account of his former membership in the Indian Army. Yeah, no evidence is clearly wrong. There's some. Maybe there wasn't enough, but there clearly was some. The focus of the Board was that there was no evidence to support the finding that a central reason for the harm that he suffered was on account of his former membership in the Indian Army. What's key here is that there is evidence, as Petitioner's counsel stated, that he was a former member of this particular Indian Army group. However, what's central here is that there's no evidence that Petitioner was harmed because of his former membership in that group. How can you say that if there was evidence put in that, and it was accepted by the immigration judge, that his personnel file was disclosed? Isn't that correct? There is evidence, yes. Okay, and because the IJ says, in addition, other than your release of your records, what else do you have as to the identity of these attackers? And that's what he had. But what he also had, that is, he had the personnel file, but he also had put in the letter from Mr. Kumar, I think, which talked about other former members being attacked. He had all the circumstances of these attacks. I mean, those weren't questioned, maybe the degree of harm that was suffered. But the focus seems to be on the identity of the attackers. And the troublesome thing that I have is that, you know, we see so many of these cases. This is one where there is, in fact, a logical circumstance with evidence in the record that other former members were attacked. Why isn't there enough evidence, therefore, to link these series of attacks to the insurgents? There is not evidence in the record that former members of this group were attacked. What's in the record is that there were attacks against, there were attacks against members when they were currently serving in the restrior rifles. And the government does not dispute that. There is clearly the restrior rifles, the Indian Army is fighting against the terrorists. And the conflict that happens as a result of that is not something from which someone can get asylum based on that fact. What's key here is there's no evidence that former members were attacked on the basis of that former membership. As you mentioned, the letter from Mr. Kumar mentions that there was a leak and members of the Army who were still serving did receive some sort of harm. It's not clear what harm that is. There's no affidavits or any evidence from any of the other 99 or how many other Army members whose names were leaked about what happened to them. Wait a minute, but the BIA doesn't tell us that. They say there's no evidence. They're not arguing that. They haven't said that Mr. Kumar's letter where he says, I come to know you and your family suffered much, not something your family, but almost all suffered and many killed, still suffering. How long, God know, who were involved in this. I gather that's the reference to these personnel. There's no evidence that it was based on their former membership. That was part of an ongoing conflict that happened there. Also, if you look at this in relation to the attacks that happened to the petitioner himself, the evidence of what happened to Petitioner is that in 2003 and 2004, which is seven and eight years after these records were leaked, Petitioner did have incidents that happened to him when he was riding on his scooter. What about his brother, though? When did that happen? The evidence is that his brother was killed in 1998, which would be two years. What about the Urdu letters? That's interesting, actually, because there was no testimony, no evidence of that before the agency. Petitioner in his brief cites to the assessment to refer, which is actually documented as not evidence before the immigration court. It was submitted, wasn't it? It's in the record. But I don't believe that it was admitted as evidence. The assessment to refer is a document that the asylum ---- How did it get into the record? I would guess that it got into the record because it's part of the documents that because this case started at the asylum office, the asylum officer will create an assessment to refer, which is a summary of why they're denying the claim, and it refers it to the immigration judge for a new hearing. All right, but in these other cases, they're frequently challenging in court in hearing testimony as compared with what was in the asylum office, the airport interview, or the asylum review. And you're saying that doesn't constitute part of the record in this case because ---- It is not something that the immigration judge or the board would have considered as evidence as they heard the claim. As they heard the claim, the immigration judge, the testimony in court, and the asylum application, there was nothing mentioned about Urdu language or the significance that Petitioner believed that might have. So he didn't testify at all to this note when he was on the stand? He testified. He was asked about what happened to him after the record was leaked, and he did testify. There was a threat. It is not clear. It seems that happens before he was discharged from the Army. So while he was still a current member of the Restore Rifles, there was a threat. A record AR, it's 134. There was a threat that was left on his door about ---- Is this a threat that you're killing our people and we're going to kill you? Is that ---- That is not clear. But wasn't there a threat or language didn't ---- or was that in the report that you say was not part of the record? That was in the report. What was present before the agency, there was a threat. It is not clear who the threat was from. It is not clear who it was. I'm not sure I understand about the report again. Again, in the district court, I don't get these cases, so I'm not very familiar. But why, if it's in the record, why would not the board consider it or the immigration judge? When a case is referred to the immigration court, they re-hear the case anew. The applicant gets a full and fair hearing. So what that is is a summary of what the asylum officer, why they're denying the claim. That's just a summary of what happened. The immigration judge is going to listen to the testimony, and that is what the immigration judge is going to decide the case on, is what they hear before them, the evidence they see before them, and not a summary of what had happened at the asylum office. Well, I'm now reading from AR 135, beginning on line 18. This is now the petitioner testifying. Because when the posting came in August, I went home. In front of, on the door, there was a threatening note saying that, quote, we will kill you, close quote. Sounds like we have testimony that there was a threatening note on the door. Yes. Yes, there is. So we have evidence in the record from his testimony, in addition to whatever else might have been forwarded, that there was a note on the door very early on saying we will kill you. Yes, there is. Yeah. But what the agency was looking for is evidence that petitioner was harmed on account of his former membership in the Indian Army. Of course. Of course. But we have just straight-up testimony. And we're, I guess, finding incredible, because the IJ did. He says, I found a note on the door. He says, we're going to kill you. And we're left to infer who might have put the note on the door and why, but the note's there. Let me ask you a different question. We see a lot of Sikh cases. I've never seen a story like this one. There are a lot of stories I'm very familiar with in general patterns and so on. Have you ever seen a story like this one? I have not, no. And I think you mentioned Sikh cases. It's important to realize that petitioner's claim is that he was persecuted on account of his former membership in the Indian Army, not that he was a Sikh. I understand that. I know. But if you do a lot of these, I don't know whether you're doing these cases for a living or whether you come in simply for this case, there's a very high rate of fraud in Sikh cases. But those are the Sikh cases where the narratives are very familiar. They're almost sort of rote. We had a case in front of us several months ago where there was a prosecution of one of the lawyers who was in trouble with sort of deficiency in imagination. He'd write the same damn story case after case after case. This narrative I've never heard. And as far as you're concerned, you've never heard of it either. No, I have not. And I exclusively do immigration cases, yes. So you're familiar with these other Sikh cases that are out there. Yes. Could I ask you about it? Let's assume we were to agree with the petitioner in this case. What would be the nature of the remand that you think is appropriate? The Board's decision denied the case only on the issue of whether or not he established that he was harmed on a counterprotected ground. If this Court were to decide that the evidence compels the conclusion that he was harmed on a counterprotected ground, it would need to be remanded to the agency because it has not been determined whether or not the harm did rise to the level of persecution, and it was not decided whether or not the government would be unable or unwilling to control. There has also been, if the statutory eligibility would be met, whether or not the agency would exercise its discretion to grant asylum in this case. So even if we hold against you on what we have in front of us, it needs to go back, right? Yes, it would need to be remanded. I think I'm going to get the same non-answer I got before, and it's not his fault, nor I think yours, but I'll ask it anyway. I understand the language, compelled to conclude. Compelled to conclude what? Compelled to conclude that it is more probable than not that there's a connection? I mean, absolute proof is impossible in almost all of these cases, and it's certainly not possible here. But compelled sounds as though we need absolute proof, and that's not right. But compelled to conclude what? Compelled to conclude that he's made a showing that it's more probable than not? Well, it's important to consider that is the standard here at this Court and at the Ninth Circuit Court of Appeals, that the record compels the conclusion that here we would need to see the record compels the conclusion that he was harmed on account of protected grounds. You're not picking up my point. At the agency level. No, no. You're still not picking up my point. Compelled to conclude. If the standard is we are compelled to conclude, there's absolutely no doubt, we are certain to a degree of 100% that such and such is true, that could be the standard. And if you just say compelled to conclude, that sounds like what the standard is. But we know that is not the standard. Because there is no such thing as certainty in almost all of these cases. And we remand a lot or grant a lot in cases, for example, of credibility, compelled to conclude, where in fact what we're looking at is, you know, the IJ unreasonably discounted all the testimony and so on. But we're never 100% certain we can't be. So compelled to conclude, what still remains on the table for me? It would need to be that compelled to conclude that no reasonable fact finder could fail to find that what happened to him was for the central reason that he was a former member of this Indian group. And what's also important to consider is that at the agency level, that is not the standard. And the reason why we're looking at the IJ and the board is because the IJ and the board are looking at whether or not the petitioner met their burden of proof to show that a central reason was that they were harmed on a protected ground. And here comes the question then, at the agency level, met their burden of proof to show that it is more probable than not that there was the connection? That is not the standard. What is the standard then? Well, it is a case-by-case basis. In other words, there is no articulated standard, which is my frustration. You're in the same position your adversary is, which is to say you don't know, but it's not your fault. You don't know. It's not there. So it isn't just our fault. It's the BIA's fault, too. Correct. But it is our argument that based on this record, in particular when you look at the particular incidents that happened to the petitioner directly, in particular the April 2004 incident when the petitioner himself pulled off the side of the road and took himself to the individual that ended up harming him, this is not a case where those incidents happened because someone was searching him out and actively searching him because they knew he was a former member of this group and that's why they were searching him out and harming him. The evidence just wasn't there for the agency to conclude that that's why these harmful things happened was on account of that project ground. Well, we've taken you over and we started the clock late, so we've detained you longer than we deserve to do. Thank you. Thank you. Response? Just briefly, Your Honor, on that assessment to refer, so that is that summary report, that was submitted as evidence to the immigration judge by the agency's attorney, and it is evidence in front of the immigration judge that he had to consider. It's often used in terms of the consistency of the claims. And where's that show in the record? I had the impression it was the actual evidence in the case. Well, it was the... I mean, does the attorney at one point say, here's the record, Your Honor, and I admit that I proffer this as evidence? Well, that's correct. The attorney submitted a written packet of their submissions and that was one of the items. So in the record, I think the assessment is on page 454, but if you go back before that, there'll be a cover page from the government's attorney listing that and submitting that to the court. I don't really have anything else, Your Honor. Okay. Thank you very much. Thank both sides for your arguments. The case of Holder v. Singh, now submitted for decision, or Singh v. Holder. The last case on our argument calendar this morning, Thunderbird Hotels v. City Apartment.
judges: Jones, Fletcher W. , Fisher